Good morning, Your Honors. My name is Jiqian Li. I am representing petitioners. Your Honors, the IJA denied petitioners' asylum application for lack of credibility. The IJA's credibility finding in this case is primarily based upon a discrepancy between petitioners' testimony and his airport statement. That is, petitioners failed to mention to the interviewing immigration officer that his wife was forcefully sterilized in 1993, 10 years ago. You know, maybe I can answer Judge Nguyen's question first. What's our legal position in this circuit on the reliability, on the IJA's relying upon airport interview to discredit a petitioner, an asylum applicant? This circuit adopted the analysis laid out in that third circuit case, which was cited in my brief. And the court, the name of the case is Singh v. INS. That's a decision in 2002, Singh spelled as S-I-N-G-H v. INS. The site is 292. We're familiar with it. Thank you. So in that case, the BIA concluded that three aspects of petitioners' testimony is not credible, and one of which is inconsistencies between Singh's airport statement and his claim asserted at the hearing. You know, I would assume that the other side is going to say to you that that's all. That is the law in the circuit. You can't deny that's the law in the circuit. What I suspect he'll say is when there are substantial inconsistencies about matters about which one would not normally be confused, you can't ignore it. Now, do you agree with that? I agree with that, Your Honor. But in this case, I don't believe there is an enormous amount of discrepancies. The failure to mention the wife's forced sterilization is perfectly reasonable under the circumstances. Actually, the government's position analysis in the brief supports our position. I'll direct the Court's attention to page 16 of the government's brief. It reads, Mr. Wang did not mention either of these incidents, referring to forced sterilization and his detention, during his airport interview as one would expect if making a viable asylum claim. Now, the Court in Singh v. INS makes clear the airport interview is not an asylum application. So therefore, in the government's opinion, logic, one would not be – it would not be that surprising if Mr. Wang did not mention his wife's forced sterilization because he was not making a viable asylum claim at the time. So this circuit in Singh makes clear that the airport interview itself was not an application for asylum. Can I ask you this? Part of the reason – part of the reason that he said he fled was because he was unable to pay the rest of the fine? That's correct, Your Honor. But he was able to pay smugglers to smuggle him out of the country. Isn't that kind of an inconsistency? Well, Your Honor, first of all, that inconsistency, the judge has never addressed that issue. And secondly, there is a perfect explanation for that, I believe, in the country report, but I cannot pinpoint the page. It says that people from Fujian province consider the money to be paid to the smuggler as an investment. So, therefore, if they want to come out from China, they can borrow money from his relatives and from his friends at a high interest rate. And people are willing to loan them that money to come to the United States, as opposed to if they stay in China, nobody would be willing to loan that money to that person because there's no – the hope that – They'll be able to repay once they get to another country. That's exactly the case, Your Honor. I think that actually the country report discussed this issue in the 1995 report. What, in your view, refutes his – you're going to just get to rebut the government's argument if you answer this question. What refutes his claim that he's entitled to asylum in this record, other than the airport interview and his existence? Just judging from the IG's overall decision, it's abundantly clear that the other problems identified by IG were just thrown in for good measure. And if you take out the judge's reliance upon the airport interview, I don't think there's enough to support an adverse credibility finding, because in this circuit, the adverse credibility finding has to be supported with specific and cogent reasons. The reasons identified by – given by IG may be specific, but they are not cogent. I don't know which judge – if you can give me a specific example and which one should be sufficiently enough to support it. I wanted you to flag that point because Mr. Wilson is coming and he's going to tell us he hasn't made out his case for asylum. And so I thought, well, he'll know what you think before he tells us so we can see. I think my brief has adequately addressed the issue regarding the other problems identified by the IG. Maybe I should have reserved my time for rebuttal. All right. Go ahead with your point, but if you rule out the airport interview, you might want to tell us how he's forfeited, how he has not made out a case for asylum. But go ahead with the argument if you want to make it. Well, I think the airport interview is a part of it. But in addition to that, I think there are some discrepancies in his testimony concerning the registration of his family and the early – his marriage gets registered after his child gets registered, as the immigration judge pointed out. And that's a discrepancy just in terms of timing. As the judge said, it's hardly – it's hard to understand how you can register a child before you register the marriage. And if you register the marriage while there is no fine being paid for it, which is consistent, again, with the country reports, again, that's another basis in addition to the airport interview. The other point is that on the well-founded fear issue is that, again, you have a case here where after the incidents in question, there's a period of eight years that the petitioner lives in China without any fear. His children are registered. His children attended school, as I recall. And so if he's fearful of paying the fine for – that if he doesn't pay the fine, he'll be persecuted, that's undercut by the record in this particular case. That the fine is there. No, by there, I mean the fine has been fixed against him. Right. And interest is going to – it's going to destroy – accumulate interest if it's not paid. Right. And to the extent, as the court – the immigration judge said, to the extent that he's going to be paying a fine, that's not a well-founded fear of future persecution. It's a fear of having to pay money. Or a fear of going to jail if you can't pay the money. Well, again, you look at the country report. It says that, you know, it doesn't compel a finding that he would go to jail. Also, he lived in China for eight years and didn't go to jail. And his children are registered. Yeah, but on this record, he lived in China for eight years but not where he could be found. Mr. Wilson, is it your position that if he is fined for failing to comply with the population policy, that – and has to go to jail, that that's not persecution? Your Honor, I didn't say if he goes to jail. I'm saying the fear is that he's going to be fined. In the absence of – And the fine is not persecution? Is that your position? As I read it – Read what? If you read what? As I read the law. What law? What law are you reading to come to that conclusion? The immigration laws require there to be persecution. Well, it speaks of extreme concepts, physical – there are certain types of infliction of harm that constitutes persecution. And I'm not aware of any case law that says because you've got to pay a fine, that rises to the level of persecution.  Even if you can't pay the fine? If – the fact that you fear that you're going to be fined is not – is not – is not – Suppose you say you can't pay the fine. But the question is whether he's going to be jailed as a result. I would – He can't pay the – let's assume he can't pay the fine. He's going to go to jail. But, again, Your Honor, that's – we're assuming that he's going to jail, but the – Well, why wouldn't I put him to jail? Your Honor, if you're asking me if I think that paying a fine is persecution, I don't think it is. If you're asking me if going to jail is persecution, I didn't say that that's not. What are you saying? On this record – You say it is? I say on this record here the evidence is that, by his own testimony, is that he's fearful of paying a fine. If you look at also the country reports, that's likely – that seems to be reasonable. Now, reasonable minds can differ. The immigration judge felt, based on this record, based on the country reports, based on his statement, that his fear, his professed fear, is of paying the fine, and that doesn't rise to the level of persecution within the meaning of the act. Does the Court have any further questions? The difficulty always in the immigration cases is that we like to use the standard U.S., at least the U.S. as we have always known it, except for some recent incidents, and what happens in the country. And China isn't the U.S. And while I understand how someone can conclude that he wouldn't go to jail, there's just no question about what would have happened if he had stayed there. The fine had continued to escalate, and he couldn't pay it. There would be some recourse. And that's his argument, and that's why he has a basis. Now, you say that might require us to speculate, but it doesn't. Well, Your Honor, I can say this. The judgment on that is properly for the immigration judge to find, and it can go either way. Your minds can differ on it. The real issue for the Court is when the immigration judge reads all of these cases and makes that determination, he or she is going to lose his proposition. You might have been assisted if you had known why I agreed with you. You might have been able to make a better argument. But you didn't let me down. That's all right. What happened when he didn't pay the fine? What happens when he didn't? What happened when he did not pay the fine? I don't, I'm not. Will you look at the record, 147? 147. Look at line 16. Well, now, what they did? I understand that's what he alleges, Your Honor. No, that's what he testified to. It's not an allegation. That's his testimony. Have you a reason to doubt his testimony? Your Honor, if you look. I'm asking you a question. Have you any basis for doubting the truth of his testimony? Your Honor. Have you any basis for doubting the truth of his testimony? Please answer the question. Your Honor, his testimony is not just this one statement. No, but this testimony. Why do you doubt the truth of it? Because there is other testimony here in the record that demonstrates that Mr. Wang, despite having not paid the fine, lived without any reason. Well, I know that. He's telling what happened at this moment. Now, did the immigration judge discredit this testimony? What the immigration judge did is look at both this testimony. No. Did she discredit? Please answer the question. Did the immigration judge discredit this testimony? The immigration judge looked at the record as a whole. Will you answer my question? Your Honor, I don't know specifically. Mr. Wilson, you are not answering my question. Did the immigration judge say this was false testimony? I don't know. As to this specific testimony? Yes. No, it did not. All right. Why do you do it, then? I don't do it, Your Honor. Well, you did it. You said it. No, what I said is, Your Honor, if you look at the record as a whole, you know, if you look at every you can find in this record and in any record a statement or two statements to support any petitioner's point of view in the proceedings. And I'm not, wouldn't be surprised. But what the job of the judge is to look at the record as a whole and make a determination. And if I'm, I cannot come and tell you here that there wouldn't be testimony that supports petitioner's version of this. No, but you ought to be totally ignorant of this testimony. No, I'm not. Then you found it discredited. Your Honor. And the immigration judge did not discredit it. Your Honor, you're putting words in my mouth that simply is not there. What I said is that the immigration judge looked at the record as a whole. And in addition to this testimony, there was other testimony that runs against the petitioner. Now, if the petitioner comes and, or if the court looks only at the petitioner's testimony and that is most favorable. Well, this is a question of persecution. What is the testimony that shows he was not persecuted? Your Honor, the question was whether he persecuted in terms of being arrested. The evidence is that. Have your house wrecked? Isn't that being persecuted? Your Honor. If you answer that question, it's having your house wrecked. If a group of IRS agents came and wrecked your house, wouldn't you say you were persecuted? Your Honor, the question is. Please answer the question. Don't answer something else. If a group of IRS agents came to your house and wrecked it, would you say you were persecuted? That is a factor that would tend towards a finding that he was persecuted. Yeah. However, the question for this Court is not whether he was persecuted. The question is whether substantial evidence supports the immigration judge's finding. And I understand that the Court may not agree with the immigration judge. But the point, which the Supreme Court's made time again, is to look at this record and not to find every point that's in the petitioner's favor. But to look at the record and find if the immigration judge's position is totally devoid of any rational basis. On this record, the question is not whether there's evidence that supports the petitioner. But on the contrary, is there evidence that supports the immigration judge's finding, who has listened to the testimony and has made a determination in the first instance? As in the case of directed verdict, we're not trying the case again. We're finding out if there's reasonable, cogent evidence to support the immigration judge. I appreciate your position on that. And you have to, I hope, know that we're going to follow the law. But what we do when we look at the immigration judge's – when we look at the record to see if it supports the immigration judge's finding is what she based her findings on and what she said was the reason. She based much of her findings on the interview that we have said is not controllable. Because she based much of her findings on the actual interview and the inconsistence between what he said now and what he said then. And there's sound reason for it, and I hope the Attorney General recognizes it. When people come into this country, first step off the boat, now out of the airplane, and they're confronted with authority, especially if you come from a country where authority can be oppressive, you ask a bunch of questions and you answer them. We have said, well, I'm going to hold you to those questions for the reason that you've just stepped off, you've had to deal with authority, you don't know what it's like to deal with authority in this country, and you may reasonably be confused. So we say, all right, you got that strike, now let's see what happens next. And there has to be something in the record. Now, if what you said at that airport interview goes to the heart of the matter, and you said it, you can't say, oh, he was nervous and he just said that. In other words, are you married? And you say, no, I'm single. Do you have two children? And you say, no, I don't have two children. Some of those things we have to look at under all of the circumstances.  And in the other case, which has gone by, you look to say, why would an immigration judge speculate that sterilization is voluntary? Now, it's no doubt it can be, but when the person says it's forced, why would you just from speculation decide it's not forced, it's voluntary? Do you see the problems that you've got in these two cases? I would say that in both of these cases, take aside the issue of the airport interview. There's ample evidence in this record. Again, with all due respect to Judge Newman, the question is to the court. But the point I was saying, if you focus on the evidence that supports the petitioner's position, I would respectfully submit that that's improper inquiry. The petitioner's position, the inquiry is whether, in addition to, while I understand the court's concern about the airport interview, if there's other evidence in this record, for example, his testimony that's not at the airport, in the first case where there are two asylum interviews, where here he testifies that he was married beforehand and was not fined, where this record shows that he lived for eight years in China by his own testimony. There's other evidence in this record here that supports the finding of inconsistency separate and apart from the airport interview. And while I understand the court's concern, I would say that this record here as a whole can be supported even separate and apart from the airport interview. Thank you, counsel. First of all, I would like to point out to Administrative Record, page 67. On that page, the IJA actually makes a credible finding that the petitioner would be subject to paying the fine. So the IJA in her decision says it appears that a respondent would only be subject to paying the fine. So that's Mr. Wilson's point. Mr. Wilson's point is there's nothing that shows he would go to jail or face other penalties than the fine. And your position is, when you read the record, he said more, and that's what we have here. And then the IJA should have relied on the airport interview as much as she had relied on the discredited petitioner. At the interview, airport interview, petitioner clearly testified that I shall be arrested and jailed. I could not afford to pay the fine. I become the object of the manhunt by the village officials to incarcerate me. But, counsel, I thought we were disregarding the airport interview. We can't use it for some purposes and discard it for other purposes. So that's what exactly the IJA did. So she relied on the part of the record, the statement, to support her position, ignoring the portion of the record that's favorable to the assignment seeker. So there are other things. I don't know if she relied upon it for other things, too. Yes, Your Honor, exactly. That's what I'm going to address next. For example, when the IJA discussed the marriage certificate and the household registration, she discussed it in the context of not for the purpose of credibility finding. She did not rely her credibility finding upon her analysis regarding the household registration and the marriage certificate. She discussed that to discount the probative value of the document. So in this court, the law is clear that if a practitioner's credibility is found to be credible, then the practitioner is not required to submit any corroborating documents. So therefore, in the minimum, Your Honor, the case should be remanded to the IJA, to the BIN, and to the IJA to make a new credibility finding without relying upon the discrepancy between the airport interview. But, Counsel, didn't she also rely on discrepancies between the application and the testimony? As I addressed in the brief, then all the reliance are just misplaced. For example, the address, home address for the last five years, respondent clearly wrote, practitioner clearly wrote in his assignment application that he ran away from 1993, and that the immigration judge apparently ignored that respondent's written statement to that effect. And also the – and then besides that, I don't see any other inconsistencies except that the – Well, she said that he – his written material in the application said – failed to mention that he was beaten when he was detained, and then when he testified, he said he was beaten. That was a discrepancy also that she mentioned. Well, Your Honor, the law in this circuit says that the court should not accept an assignment application to be as complete to be as the testimony. But being beaten is a pretty significant occurrence in an applicant's life. I mean, one would think that if somebody was beaten, that's something that would be put in the application. Exactly. But respondent said – respondent clearly mentioned that he was detained, and then as to what transpired during the detention, and respondent testified at the hearing. But in the application, he didn't mention he was beaten. He did not, Your Honor. But again, the only operative event in this case, I believe, is the forced sterilization. Respondent mentioned that in the assignment application, and testified to that in great detail at his hearing, and he supported – supporting arguments to show that his wife was indeed sterilized, including the photographs showing the scar and also the certificate of sterilization from China indicating his wife was indeed sterilized in 1993.  Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar, Pan v. Ashcroft, has been submitted on the briefs. The next case on calendar for argument is Flora v. Ashcroft.
judges: Farris, Noonan, Rawlinson